UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, JOHN DOE 6, JOHN DOE 7, JOHN DOE 8, JOHN DOE 9, JOHN DOE 10, JOHN DOE 11, JOHN DOE 12, JOHN DOE 13, and JOHN DOE 14, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>  vs.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,<br><br>        Defendant. | Case No. 1:23-cv-00542-SEB-MJD<br><br>Judge:   Hon. Sarah Evans Barker |

## **FOURTH SUPPLEMENTAL JOINT REPORT ON THE STATUS OF DISCOVERY**

Pursuant to the Court's Scheduling Order (ECF No. 51), Plaintiffs John Does 1-14 ("Plaintiffs") and the National Collegiate Athletic Association ("Defendant" or "NCAA") (collectively, "the Parties"), by counsel, respectfully submit this Fourth Supplemental Joint Report on the Status of Discovery in advance of the December 13, 2023 telephonic status conference (ECF No. 88).

    *1.*    *A detailed description of all discovery completed within the preceding 28 days.*

**Parties' Statement:**  The Parties continue to meet and confer via email and Zoom videoconferences regarding their respective discovery responses and their proposed narrowed or otherwise modified discovery requests.  The Parties met most recently this morning by videoconference for an hour.

**Plaintiffs' RFPs**

Through their meet and confers, the Parties were able to reach agreement on Plaintiffs' RFP Nos. 1-3, 5, 18, 19, 20, 22, 26, 28, 33, and 34, and the NCAA confirmed it has no documents responsive to Plaintiffs' RFP No. 29.  As set forth in Section 2 below, the Parties are still in the process of negotiating stipulations of fact that may obviate the need for Plaintiffs' RFP Nos. 9-17, 21, and 23-25.  Plaintiffs sent their proposed stipulations on November 10, 2023; the NCAA responded on December 5, 2023.  The Parties continue to meet and confer on these stipulations.  Finally, as set forth in Section 3 below, the Parties have reached impasse as to Plaintiffs' RFP Nos. 4, 6-8, 27, and 30-32, as well as to the definition of "Sexual Misconduct," which affects RFP Nos. 4-7, and 32, and the temporal scope of the NCAA's responses, which affects all RFPs except Nos. 2-3, 5, 18-20, 22, and 28 (for which the NCAA has agreed to produce documents as requested).

**NCAA's RFPs**

Plaintiffs agreed to produce all non-privileged documents responsive to all of the NCAA's requests for production except for the portions of two requests, RFP Nos. 23 and 24, that concern social media.  Two disputes have arisen related to these responses, as detailed in Section 3 below.

*2.     A detailed description of all discovery presently scheduled or pending, including the due dates for any pending discovery requests and the scheduled dates for any depositions, and the identity of the counsel responsible for completing such discovery.*

**Parties' Statement:**  The Parties continue to actively meet and confer regarding their respective responses to each other's requests for production of documents.

***Production of Party ESI***.  With respect to the production of electronically-stored information ("ESI"), on November 6, 2023, Plaintiffs requested that the NCAA provide (1) a list

of proposed ESI sources, and (2) search terms for the location of responsive ESI within the NCAA's possession, custody, and control. On November 10, 2023, Plaintiffs sent the NCAA their proposal regarding (1) the sources of Plaintiffs' ESI to be searched, and (2) search terms to locate documents responsive to all of the NCAA's document requests within Plaintiffs' ESI sources. On November 17, 2023, the NCAA sent Plaintiffs a list of proposed search terms to identify documents responsive only to Plaintiffs' RFP Nos. 2 and 3, as well as two additional search terms intended to identify documents responsive to Plaintiffs' RFP No. 4, but stated that it was in the process of testing those and additional search terms. The NCAA asserts that it did not send search terms for other RFPs because, for some RFPs, responsive documents were being identified without the use of search terms, and for other RFPs, the Parties were still meeting and conferring about what, if anything, would be produced in response to the RFPs so there was not yet a target population of documents to identify through search terms. Plaintiffs disagree that the Parties' ongoing meet and confers—which concerned scope—provide any basis for the NCAA's failure to propose <u>any</u> search terms (other than for RFP Nos. 2-4) while those meet and confers were ongoing. Indeed, Plaintiffs were able to propose search terms for all of the NCAA's RFPs on November 6, even though two of those RFPs (regarding social media) remain in dispute.

To ensure discovery on RFP Nos. 2 and 3 was not delayed, the NCAA proceeded with review of documents hitting on their proposed search terms for RFP Nos. 2-3 and anticipate that they will soon be able to produce responsive documents. Plaintiffs on December 4 and December 7 proposed additional search terms and revisions for RFP Nos. 2-4, and the NCAA is testing those search terms and the Parties are meeting and conferring about those additional terms. The NCAA has yet to propose ESI sources, custodians, or search terms for the remainder

of Plaintiffs' RFPs. The reasons for the NCAA's timing is stated above, as is Plaintiffs' disagreement with that rationale.

The Parties are still in the process of meeting and conferring on the search terms exchanged to date. Plaintiffs request that the Court set a December 15, 2023 deadline for the NCAA to propose search terms that will target documents responsive to the set of Plaintiffs' RFPs that are no longer in dispute. For the back and forth on search terms related to RFP Nos. 2-3, which includes newly requested search terms from Plaintiffs on December 4 and December 7, the NCAA anticipates having those search terms hits to disclose by the end of this week to facilitate more meet and confer. For newly agreed upon categories resulting from the NCAA's December 5 meet and confer letter, as outlined in Section 1 above, those terms will not be tested and ready for disclosure by December 15. The NCAA should have specific search term proposals by the end of December, hopefully sooner.

The Parties are also continuing to meet and confer regarding the search terms proposed by Plaintiffs for their review of ESI. As set forth below, the NCAA has concerns about Plaintiffs' use of search terms on certain categories of documents to identify the universe of potentially relevant ESI (such as texts, chat messages, and social media posts), because the NCAA is concerned that the use of search terms will exclude a disproportionate number of responsive documents from human review in relevant time periods. Specifically, the NCAA is concerned that for certain types of communications on topics related to emotional distress, the communications may not contain traditionally spelled or formally written text and thus search terms will not flag responsive ESI for review and production. The NCAA is also concerned that to date, to the extent search terms are used, Plaintiffs have not agreed to any of the NCAA's proposed search terms related to positive emotions, and Plaintiffs only proposed search terms

related to negative emotions.  Plaintiffs have responded in meet and confer that they are open to running some search terms related to positive emotions.  The Parties will continue to meet and confer on search terms and other review methodologies applied to Plaintiffs' ESI.

Finally, as set forth above, the Parties are exploring potentially stipulating to certain undisputed facts related to the NCAA's rules, policies, and codes of conduct and how it enforces them in lieu of taking discovery into those facts.  Plaintiffs sent the NCAA their proposed fact stipulations on November 10, 2023.  On December 5, 2023, the NCAA sent responses to Plaintiffs' proposed stipulations, proposed additional stipulations, and asked Plaintiffs to further narrow their stipulations to target the NCAA bylaws relevant to this case.  Plaintiffs are still reviewing the stipulations provided by the NCAA on December 5, and will provide a response to the NCAA soon.

*Medical Provider Subpoenas.*  On December 5, 2023, counsel for the NCAA informed Plaintiffs' counsel of its intent to serve subpoenas on Plaintiffs' medical providers, counselors, and therapists who may have knowledge of the events alleged in the Complaint and specifically the alleged damages.  On the same day, the NCAA requested Plaintiffs identify by name these medical providers, counselors and therapists since names and contact information were not provided in the Plaintiffs' initial disclosures; they were only identified as a category.  To that end, Plaintiffs' counsel will provide the NCAA with the names and known contact information of all such providers in supplemental initial disclosures.  The NCAA requested a date certain for receiving those supplemental initial disclosures.  Relatedly, on December 5, 2023, the NCAA proposed HIPAA and FERPA release forms for Plaintiffs' consideration.  On the same day, Plaintiffs explained that those draft forms were overbroad.  On December 7, 2023, the NCAA proposed modified HIPAA and FERPA release forms, which Plaintiffs accepted today.

*Subpoenas to Plaintiffs' Parents*.  Plaintiffs identified all of their parents (without names or contact information) in their initial disclosures as persons with relevant information.  On December 5, 2023, counsel for the NCAA asked Plaintiffs' counsel if they represented Plaintiffs' parents for purposes of accepting service of document subpoenas.  Plaintiffs' counsel identified by name the family members they represent in connection with this matter.  The NCAA asked which parents have responsive information since the initial disclosures only name parents as a category.  Plaintiffs will provide amended initial disclosures that identify which parents have relevant information and for those parents not represented by Plaintiffs' counsel, Plaintiffs will provide contact information.  The NCAA requested a date certain for receiving those supplemental initial disclosures.

*Second Set of RFPs from NCAA.*  On December 7, 2023, the NCAA served a second set of Requests for Production of Documents on Plaintiffs, responses to which are due January 8, 2024.

*Subpoena from NCAA on USF.*  On December 8, 2023, the NCAA served a Subpoena to Produce Documents on the University of San Francisco ("USF"). USF's responses are due January 29, 2024.

Counsel responsible for negotiations on behalf of the NCAA are Carolyn Hoecker Luedtke, Hailyn Chen, Ariel Teshuva, Kathleen Foley, Andrea Pierson, and Nicholas Alford, and on behalf of Plaintiffs are Elizabeth Fegan, Lynn Ellenberger, Paige Smith, Jonathan Selbin, Michelle Lamy, and Jessica Moldovan.

    *3.    A detailed description of any discovery disputes presently pending, including the status of the resolution of the dispute and the identity of the counsel responsible for resolving the dispute.*

    **Parties' Statement:**

**Plaintiffs' RFPs**

    ***Temporal Scope***. Though all of Plaintiffs' RFPs seek documents for the time period 1999 through the present, the NCAA has agreed to this time period only for RFP Nos. 2-3, 5, 18-20, 22, and 28.[1]  For RFP Nos. 6-8, and 32 (regarding reports and complaints of "Sexual Misconduct"), and RFP Nos. 9-17, 21, 23-25, and 31 (for which the Parties are currently negotiating potential stipulations), the NCAA objects to producing documents dated before August 1, 2019.  For RFP No. 4 (documents and communications related to complaints and investigation of Sexual Misconduct at USF), the NCAA has not yet provided a position as to temporal scope.  For these RFPs, the parties are at impasse.  Plaintiffs believe they were authorized by the Court at the October 18, 2023 status conference (ECF No. 83) to move to compel, and the NCAA disputes that the Court's authorization from the October 18 status conference covered this temporal limitation dispute.  For the avoidance of doubt, Plaintiffs therefore seek permission to move to compel.

    ***Sexual Misconduct***. The parties are at impasse with respect to the definition of "Sexual Misconduct" as used in Plaintiffs' RFP Nos. 4-7 and 32.[2]  Plaintiffs define "Sexual Misconduct"

---

[1] The parties are in agreement as to an appropriate time period of 2018 through the present for RFPs Nos. 29-30.

[2] RFP No. 4: "All Documents and Communications regarding any investigations, allegations, grievances, and/.or complaints (including the complaint documents themselves) regarding Sexual Misconduct and running students of sports teams at USF."

RFP No. 5: "All policies concerning Sexual Misconduct, including any handbook or guideline or policy designed to guide Athletic Personnel at NCAA member institutions."

as "sexual or gender-related harassment and bullying or hazing, or other inappropriate conduct of a sexual nature." The NCAA defines "Sexual Misconduct" as "sexual harassment and sexual abuse, or other inappropriate conduct of a sexual nature." Plaintiffs contend that discovery into, for example, the NCAA's knowledge of behavior similar to that alleged by the Plaintiffs—e.g., coaches who call players "pussy" or "faggot," First Amended Complaint ¶ 126 (or similar behavior, regardless of whether such slurs are used)—is relevant. The NCAA has agreed in meet and confer that sexualized bullying or hazing, such as calling players the sexualized slurs in First Amended Complaint ¶ 126, would fall within the scope of the NCAA's definition of "Sexual Misconduct." The NCAA disagrees that generalized bullying or hazing of a non-sexualized nature should be within the definition of "Sexual Misconduct" as Plaintiffs' definition suggests. For example, a complaint that a coach called student-athletes "a cancer" or "worthless," or subjected them to excessive running or extreme temperatures, would not be responsive even though it could be understood to be bullying or hazing. Plaintiffs believe the context in which such abuse occurs is relevant to determining whether it contributes to a hostile sexualized environment. The parties are therefore at impasse. Plaintiffs believe they were authorized by the Court at the October 18, 2023 status conference (ECF No. 83) to move to compel, and the

---

RFP No. 6: "All reports You have received regarding allegations of Sexual Misconduct made against Athletic Personnel at an NCAA member institution."

RFP No. 7: "All Documents and Communications regarding actual or possible disciplinary or corrective actions taken against Athletic Personnel at an NCAA member institution related to Sexual Misconduct."

RFP No. 32: "All Documents, including statistical data, related to the NCAA's tracking, review, and/or analyses regarding allegations of Sexual Misconduct made against Athletic Personnel at an NCAA member institution."

NCAA disputes the October 18 status conference covered this dispute over the definition of "sexual misconduct." For the avoidance of doubt, Plaintiffs seek permission to move to compel.

**NCAA's RFPs**

*Social Media*. The NCAA seeks permission to file a motion to compel regarding the Plaintiffs' refusal to produce certain responsive documents from social media. Plaintiffs objected to producing their complete, unabridged social media accounts in response to RFP Nos. 23 and 24, and requested that the NCAA provide categories of social media it is interested in. Since then, the Parties have met and conferred. On November 8, the NCAA proposed ten categories of responsive information *within* the social media accounts. After back and forth over the last month, Plaintiffs have agreed to produce nearly all of the categories NCAA requested from social media, and specifically:

Category 2: All documents discussing or referring to Nino Giarratano, Troy Nakamura, and any member of the USF baseball team.

Category 3: All documents discussing or referring to USF baseball.

Category 4: All documents discussing or referring other NCAA baseball programs.

Category 5: All documents discussing other NCAA baseball coaches.

Category 6: All documents indicating or discussing an intent to transfer schools or the process of transferring schools.

Category 7: All documents otherwise discussing or referring to any allegations in the complaint.

Sub-category 8(i): All documents expressly referencing negative feelings such as depression, sadness, grief, fear, anxiety, suicidality, anger, and similar, including both statements

made by the Plaintiffs and statements made by others on the Plaintiff's social media feed referencing the Plaintiff's mental or emotional state (e.g. through comments).

Sub-category 8(ii): All documents expressly referencing positive feelings such as happiness, pleasure, excitement, laughter, amusement, hope, and similar, including both statements made by the Plaintiffs and statements made by others on the Plaintiff's social media feed referencing the Plaintiff's mental or emotional state (e.g. through comments).[3]

Category 9: All documents describing or reflective of a plaintiff's physical health or well-being – positive or negative.

Category 10: All documents describing or reflective of conduct by any person, including the Plaintiff, that constitutes "sexual misconduct" as defined by the Plaintiffs.

The Parties are at an impasse on whether Plaintiffs should be required to produce documents from another sub-category, 8(iv), which seeks: "All other documents that otherwise 'reveal, refer, or relate to any emotion, feeling, or mental state, as well as communications that reveal, refer, or relate to events that could reasonably be expected to produce a significant emotion, feeling, or mental state.'"  The NCAA asserts that this information is relevant, at a minimum, to Plaintiffs' claims for emotional distress damages and there is little burden associated with reviewing and producing the materials.  Plaintiffs assert that they are already agreeing to produce medical records, and have also and already agreed to search for two sub-categories—8(i) and 8(ii)—that concern social media posts and communication that "expressly reference" Plaintiffs' feelings of happiness and sadness.  Plaintiffs further contend that the NCAA's overlapping sub-category for "All *other* documents that otherwise 'reveal, refer, or

---

[3] The Parties are also still negotiating search terms and other review protocols for this category in particular and all responses for Plaintiffs generally. The NCAA has proposed search terms related to positive emotions and awaits Plaintiffs' response.

relate to any emotion, feeling, or mental state'" (emphasis added) is vague and overbroad, especially in light of Plaintiffs' agreement on the other categories. The NCAA argues that this category is the exact scope of the production previously ordered by a Southern District of Indiana court in a case in which, like in this one, the plaintiff put their mental and emotional state at issue through claiming significant emotional distress. *E.E.O.C. v. Simply Storage Mgmt.*, LLC, 270 F.R.D. 430, 435 (S.D. Ind. 2010). The documents are relevant to Plaintiffs claims and they have made no showing of burden. Plaintiffs note that *Simply Storage*—which was decided during the infancy of social media, when volumes were substantially lower than they are today—actually *confirms the overbreadth* of the NCAA's request; there, the Court held that "the simple fact that a claimant has had social communications is not necessarily probative of the particular mental and emotional health matters at issue in the case," because while "anything that a person says or does might in some theoretical sense be reflective of her emotional state . . . that is hardly justification for requiring the production of every thought she may have reduced to writing." 270 F.R.D. at 435. The NCAA emphasizes that it does not contend that the "simple fact that [Plaintiffs] ha[ve] had social media communications" is "probative of the particular mental and emotional health matters at issue in the case," which is why it is seeking only the social media communications that *are* probative of the issues in the case, included the discovery specifically authorized by *Simply Storage*.

The NCAA seeks permission to file a motion to compel.

***Search Methodology***. Plaintiffs informed the NCAA that in addition to manually locating hard copies and manually locating certain electronic files for responsive documents and communications—a substantial portion of which they have already produced to the NCAA—they also intend to locate additional potentially responsive ESI (e.g., in text messages, email,

instant messages, and social media accounts) for all of the NCAA's RFPs through the use of search terms. The NCAA views the production of manually located electronic files to date as minimal and assumes Plaintiffs will largely be relying on a further review of its ESI collection with search terms. Pursuant to the Parties' ESI Protocol, on November 10 Plaintiffs disclosed their proposed search terms to the NCAA, and the NCAA proposed additional search terms on December 6. The NCAA is concerned that the use of search terms will exclude a wide swath of important, responsive information related to Plaintiffs emotional distress claims. The Parties are continuing to meet and confer in an effort to reach agreement on search terms, but there are areas of dispute including the following:

- The NCAA does not believe that search terms are appropriate as a complete substitute to a human review of responsive documents in certain categories (like texts, chats, and social media) during relevant times. It is not clear that Plaintiffs would communicate in those mediums using full formed, perfectly spelled words. The NCAA has proposed that during the specific time period of alleged abuse and thereafter, when the Plaintiffs were allegedly suffering emotional distress, all text messages and other social media and chat messages should be reviewed, not just those that hit on search terms. Or, at a minimum, the Plaintiffs should be interviewed by their counsel to identify what documents would exist and what language they would have used in potentially responsive documents, including to identify documents that reflect positive emotions and state of mind.

    Plaintiffs do not believe is it reasonable or appropriate for the NCAA to seek "eyes on" review of every single piece of ESI in Plaintiffs' possession, custody, or control, on the off-chance that a document may be relevant. Plaintiffs are conducting both a manual review of selected hard copy and electronic documents, and using search terms to identify additional potentially responsive electronic documents. This is the same standard the NCAA is applying to its own document productions in this case, and there is no justification for seeking more burdensome discovery methods from Plaintiffs.

- The Parties are continuing to meet and confer about the protocol that Plaintiffs will use to review videos and photos that are responsive to RFPs.

- The NCAA has requested that Plaintiffs search their ESI for "emojis" associated with emotions in responsive documents.  Plaintiffs are investigating whether it is even possible to search for, for example, icons like the below.  Even if it is possible, however, Plaintiffs disagree that requiring searches for emojis is relevant or proportional to the needs of this case.



Counsel responsible for negotiating a resolution of these disputes on behalf of the NCAA are Carolyn Hoecker Luedtke, Hailyn Chen, Ariel Teshuva, Kathleen Foley, Andrea Pierson, and Nicholas Alford, and on behalf of Plaintiffs are Elizabeth Fegan, Lynn Ellenberger, Paige Smith, Jonathan Selbin, Michelle Lamy, and Jessica Moldovan.

*4.     A detailed description of all discovery that is planned to be completed within the 28-day period following the report, including the identity of the counsel responsible for completing such discovery.*

**Parties' Statement:**   Within the next 28-day period, the Parties expect to continue their relevance and privilege reviews of client ESI to be produced to the opposing party, as well as continue their review of opposing party document productions. Plaintiffs anticipate making at least one, if not more, rolling document productions in the next twenty-eight days, consisting of Plaintiffs' responsive ESI. The NCAA anticipates that it will make at least one document production, if not more, in the next twenty-eight days.

Counsel responsible for search term negotiations on behalf of the NCAA are Carolyn Hoecker Luedtke, Hailyn Chen, Ariel Teshuva, Kathleen Foley, Andrea Pierson, and Nicholas Alford, and on behalf of Plaintiffs are Elizabeth Fegan, Lynn Ellenberger, Paige Smith, Jonathan Selbin, Michelle Lamy, and Jessica Moldovan.

    *5.    A description of all known discovery remaining to be completed in this matter, including a proposed timetable for the completion of such discovery and the identity of the counsel responsible for completing such discovery.*

    **Parties' Statement:**  The Parties anticipate completing discovery according to the schedule set forth in the Court's Case Management Order (ECF No. 50), and specifically:

> All discovery relating to class certification issues, including class certification expert witness discovery, shall be completed by **May 29, 2024**. All discovery relating to liability issues, including liability expert witness discovery, shall be completed by **August 16, 2024**. All remaining discovery shall be completed by **January 17, 2025**.

    **Plaintiffs' Statement:**  Plaintiffs are continuing to evaluate whether additional written discovery to the NCAA is appropriate.  Plaintiffs will begin scheduling depositions after substantial document and data production have been provided.  The attorneys responsible for completing such discovery are Elizabeth Fegan, Lynn Ellenberger, Paige Smith, Jonathan Selbin, Michelle Lamy, and Jessica Moldovan.

    **The NCAA's Statement:**  The NCAA anticipates serving document subpoenas on Plaintiffs' medical providers once Plaintiffs provide the requested contact information and agrees upon the appropriate FERPA and HIPAA authorizations.  In addition, the NCAA anticipates serving document subpoenas on Plaintiffs' parents now that Plaintiffs' counsel has confirmed that they represent them and will accept service.  The NCAA continues to evaluate whether there is additional third party or written discovery that it should serve.  The attorneys responsible for completing this discovery on behalf of the NCAA are Carolyn Hoecker Luedtke, Hailyn Chen, Ariel Teshuva, Kathleen Foley, Andrea Pierson, and Nicholas Alford.

    *6.    Any other discovery issues any party believes should be brought to the attention of the Court so as to avoid any delays in the completion of discovery in this matter.*

    **Parties' Statement:**  The Parties do not presently have any additional discovery issues that require the Court's attention.

DATED: December 11, 2023  By:  _____*/s/ Carolyn Hoecker Luedtke*_____

        Carolyn Hoecker Luedtke (*pro hac vice*)
        MUNGER, TOLLES & OLSON LLP
        560 Mission Street, Twenty-Seventh Floor
        San Francisco, California 94105-3089
        Telephone:     (415) 512-4000
        Facsimile:      (415) 512-4077
        Email:   Carolyn.Luedtke@mto.com

        Hailyn J. Chen (*pro hac vice*)
        Ariel T. Teshuva (*pro hac vice*)
        MUNGER, TOLLES & OLSON LLP
        350 South Grand Avenue, Fiftieth Floor
        Los Angeles, California 90071-3426
        Telephone:     (213) 683-9100
        Facsimile:      (213) 687-3702
        Email:   Hailyn.Chen@mto.com
                Ariel.Teshuva@mto.com

        Kathleen Foley (*pro hac vice*)
        MUNGER, TOLLES & OLSON LLP
        601 Massachusetts Ave NW, Ste. 850
        Washington, District of Columbia 20001-5369
        Telephone:     (202) 220-1137
        Facsimile:      (202) 220-2300
        Email:   Kathleen.Foley@mto.com
        Andrea Roberts Pierson
        Nicholas B. Alford
        FAEGRE DRINKER BIDDLE & REATH LLP
        300 N. Meridian Street, Suite 2500
        Indianapolis, Indiana  46204
        Telephone:     (317) 237-1424
        Facsimile:      (317) 237-1000
        Email:   andrea.pierson@faegredrinker.com
                nicholas.alford@faegredrinker.com

        *Attorneys for Defendant The National Collegiate Athletic Association*

DATED: December 11, 2023          By:        */s/ Michelle A. Lamy*

        Elizabeth A. Fegan (*pro hac vice*)
        beth@feganscott.com
        Paige L. Smith (*pro hac vice*)
        paige@feganscott.com
        FEGAN SCOTT LLC
        150 S. Wacker Drive, 24th Floor
        Chicago, IL 60606
        Telephone: (312) 741-1019
        Facsimile: (312) 264-0100

        Lynn A. Ellenberger (*pro hac vice*)
        lynn@feganscott.com
        FEGAN SCOTT LLC
        500 Grant Street, Suite 2900
        Pittsburgh, PA 15219
        Telephone: (412) 346-4104
        Facsimile: (312) 264-0100

        Jonathan D. Selbin (*pro hac vice*)
        jselbin@lchb.com
        Jessica A. Moldovan (*pro hac vice*)
        jmoldovan@lchb.com
        LIEFF CABRASER HEIMANN
         & BERNSTEIN, LLP
        250 Hudson Street
        New York, NY 10013
        Telephone: (212) 355-9500
        Facsimile: (212) 355-9508

        Michelle A. Lamy (*pro hac vice*)
        mlamy@lchb.com
        LIEFF CABRASER HEIMANN
         & BERNSTEIN, LLP
        275 Battery Street, 29th Floor
        San Francisco, CA 94111
        Telephone: (415) 956-1000
        Facsimile: (415) 956-1008

        Lynn A. Toops, No. 26386-49
        ltoops@cohenandmalad.com
        Arend J. Abel, No. 10763-49
        aabel@cohenandmalad.com
        COHEN & MALAD, LLP
        One Indiana Square, Suite 1400
        Indianapolis, IN 46204
        Telephone: (317) 636-6481
        Facsimile: (317) 636-2593

        *Attorneys for Plaintiffs and the Proposed Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 11, 2023, a copy of the foregoing was filed electronically with the Clerk of the Court using the Court's CM/ECF system. Parties may access this filing through the Court's system.

*/s/ Michelle A. Lamy*
